1    **TRANSCRIBED FROM DIGITAL RECORDING**

2                    IN THE UNITED STATES DISTRICT COURT
                    NORTHERN DISTRICT OF ILLINOIS
3                          EASTERN DIVISION

4    NICOLE STRICKLER, on behalf of      )
     herself and the class members       )
5    described below,                     )
                                          )
6                    Plaintiff,           )
                                          )
7                    vs.                  )  No. 11 C 3468
                                          )
8    BIJORA, INC., doing business as      )
     Akira; and OPT IT, INC., an Illinois )
9    corporation,                         )  Chicago, Illinois
                                          )  May 15, 2012
10                   Defendants.          )  9:47 A.M.

11                   TRANSCRIPT OF PROCEEDINGS - Status
           BEFORE THE HONORABLE JEFFREY COLE, Magistrate Judge
12
     APPEARANCES:
13
     For the Plaintiff:        MESSER & STILP
14                             166 West Washington Street
                               Suite 300
15                             Chicago, Illinois  60602
                               BY:  MR. JOSEPH SHAW MESSER
16
     For Defendant Bijora:     TRESSLER LLP
17                             233 South Wacker Drive
                               22nd Floor
18                             Chicago, Illinois  60606-6308
                               BY:  MR. JAMES KENNETH BORCIA
19

20                   PAMELA S. WARREN, CSR, RPR
                       Official Court Reporter
21                   219 South Dearborn Street
                           Room 1928
22                   Chicago, Illinois   60604
                         (312) 294-8907
23
     **NOTE:  Please notify of correct speaker identification.**
24   **FAILURE TO SPEAK DIRECTLY INTO THE MICROPHONE MAKES PORTIONS**
     **UNINTELLIGIBLE.**
25

1  **APPEARANCES:  Continued**

2

3  For Defendant Opt IT:        EDWARDS WILDMAN PALMER LLP
                                225 West Wacker Drive
                                Suite 3000
4                               Chicago, Illinois  60606-1229
                                BY:  MS. SHANNON T. HARELL
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1        (Proceedings held in open court:)
 2             THE CLERK:  11 C 3468, Strickler versus Bijora.
 3             MR. MESSER:  Good morning, your Honor.  Joseph Messer
 4   on behalf of plaintiff.
 5             MR. BORCIA:  Ken Borcia for the defendant.
 6             THE COURT:  Mr. Borcia.
 7             MS. HARELL:  Shannon Harell on behalf of defendant Opt
 8   IT, Inc.
 9             THE COURT:  Well, the first thing is what's happening
10   with the discovery?
11             MR. BORCIA:  We are produced all the cards yesterday
12   to counsel.
13             THE COURT:  How many were there?
14             MR. BORCIA:  About 50,000.
15             MR. MESSER:  I went over to counsel's office.  I
16   looked at the -- there were 16 boxes.  I obviously didn't have
17   time to count them in the time I was there.
18             THE COURT:  There is a lot.
19             MR. MESSER:  Excuse me?
20             THE COURT:  There is a lot.
21             MR. MESSER:  There are.  There are a lot of cards in
22   these boxes.
23             THE COURT:  Did they have the various -- did they have
24   the information that supports you or doesn't -- or supports
25   Mr. Borcia?
```

1    MR. MESSER:  They are a mix of types of cards, range

2  of -- ranging from the type that was produced to us as an

3  example in discovery.  And there actually are -- I counted

4  seven different types of cards, only one of which has a very,

5  very faint, almost unreadable, language that would constitute

6  potentially a consent by a consumer.

7    THE COURT:  You're going to have to go through all of

8  them yourself.  He's not going to help you.

9    MR. MESSER:  I understand that.

10    Counsel has stated that he is going to produce copies,

11  and they are to be Bates stamped, and then we'll have to deal

12  with it.  We have a six-month discovery period, and we're going

13  to work on it.

14    THE COURT:  And costs are yours.

15    MR. MESSER:  The costs of?

16    THE COURT:  Reproduction.

17    MR. MESSER:  If that's your Honor's order --

18    THE COURT:  Well --

19    MR. MESSER:  -- so be it.

20    THE COURT:  -- he doesn't have to -- he doesn't have

21  to pay for your -- all I wanted for you was to have the cards.

22  If you want the cards reproduced, he'll send them to your copy

23  service or a copy service, and you pay like in every other

24  case.

25    MR. MESSER:  All right.  Well, that's fine.  We'll

1    arrange for the copying then.

2            THE COURT:  Okay.

3            MR. BORCIA:  My client will -- does not want them

4    leaving my premises.  We can copy them in-house, and I'll

5    charge counsel for the copying costs.

6            THE COURT:  How much?

7            MR. MESSER:  I -- yeah, I would like the --

8            MR. BORCIA:  Whatever the -- I think it is 20 cents a

9    page.  Whatever --

10           MR. MESSER:  Well, I probably could get it done for

11   less than 20 cents a page.

12           MR. BORCIA:  They are not leaving my office.  These

13   are my client's original records.  I have to keep them in the

14   same order that my client produced them to me.  We can work out

15   amongst ourselves what the charge would be, but --

16           THE COURT:  I'm not going to -- I'm not going to

17   quarrel about pennies to reproduce things.

18           What I wanted you to have was what you have got.  Now

19   I'm just not going to fight about now, oh, these documents

20   shouldn't leave the office.  You know what, if he tells you

21   that these are -- as I understand it these -- this is the core

22   evidence for their defense.  And you're going to claim it is

23   the core evidence to show they have no defense.  So I don't

24   want there to be an issue where the evidence in the case

25   vanishes because a messenger didn't do it right or something

1    happened.

2          Now I suppose that Mr. Borcia's folks could screw up

3    the copying, but that's not likely.  The concern is about

4    getting lost or there being a fire somewhere else.  And if the

5    cost is slightly higher, you'll bear the costs, and we'll deal

6    with it at the end of the case.  Okay?  But I'm not going to

7    start fighting about ten cents a page.

8          MR. MESSER:  Okay.

9          THE COURT:  Okay?  But you can work out the costs

10    together.

11          MR. BORCIA:  Your Honor --

12          THE COURT:  Now -- Mr. Borcia?

13          MR. BORCIA:  I have an issue with the Court's last

14    order.  I don't know if you want me to --

15          THE COURT:  Yeah, I sure do.

16          MR. BORCIA:  Because I -- in all my years of practice,

17    I had never been so shocked by an order in my life.

18          Let me just first get to --

19          THE COURT:  Say anything you want.  That's what you're

20    here for.

21          MR. BORCIA:  Let me first here get to the backdrop of

22    how this motion came about.  I had a vacation planned with my

23    wife.  First vacation in about six years.  It was set about

24    seven months ago.

25          I got it -- on the eve of me leaving, I got a motion

1  to compel.  Okay?  I asked counsel -- emailed him, will you

2  agree to set the motion over for a week?

3         The response I get, after I leave, by email is on

4  Saturday.

5         THE COURT:  And you told him you had a pre-planned

6  vacation?

7         MR. BORCIA:  I did.  I said I would like to appear on

8  this --

9         THE COURT:  That was not told to me.

10         MR. BORCIA:  Okay.  And I am not blaming, your Honor.

11  I'm just going to give you the backdrop of what happened.

12         I emailed him and said, I would like to appear on

13  this, but I'm on vacation next week, will you agree to reset

14  the motion to 5-16, 5-18 or 5-25?  That's on Friday at 1:30.

15         On Saturday, after I'm gone, he responds to me --

16         THE COURT:  I'm sorry, what time did you send it?

17         MR. BORCIA:  I'm sorry.  He responds on Monday.

18         THE COURT:  What time did you send it?

19         MR. BORCIA:  Friday at 1:30.

20         I got the motion on Thursday at 9:00 P.M.  On --

21         THE COURT:  9:00 P.M. at night?

22         MR. BORCIA:  9:00 P.M.  And I'm leaving on Friday.

23  After I leave for work that day.

24         I get no response until Monday when I am gone --

25         THE COURT:  The motion is Friday, and

1   Thursday -- Thursday evening, right?

2           MR. BORCIA:  Thursday evening at 9:00 P.M. it is

3   filed.

4           THE COURT:  Okay.

5           MR. BORCIA:  Friday at 1:30 I emailed him to ask him,

6   as a courtesy, I'm on vacation, will you agree to reset the

7   motion?  His response is, I cannot agree to delay our motion

8   further.  We have been waiting for production of the documents

9   since serving Bijora with our discovery requests in early

10  January of this year.  We shouldn't have to wait any further

11  for the documents.

12          This is a one-week request for an extension.  The

13  statement in his -- well, in his response, we have been waiting

14  for the production of documents and serving Bijora with our

15  discovery request in early January is absolutely false.  These

16  documents were in fact not requested in his document requests.

17  In fact, your Honor ruled at the hearing we had in March on

18  this that they were -- in fact were not requested.  And I can

19  quote from the order --

20          THE COURT:  You don't need to quote from the order.

21          MR. BORCIA:  Your Honor read the document request and

22  said (unintelligible) what you requested was the forms, the

23  sample forms.  And he requested everything that was

24  (unintelligible).

25          We sent him an electronic database of all this

1    information that had information on the forms on there.  That

2    -- he asked for a list.  We produced the list.  So we produced

3    that to him.

4           These forms were not requested, so -- he refuses my

5    request, so I have to send an associate over here who --

6           THE COURT:  Was not prepared totally, and I understood

7    that.

8           MR. BORCIA:  But I -- and we'll get to that in a

9    second.

10          But I was forced, because he wouldn't extend me the

11   courtesy of a one-week extension --

12          THE COURT:  Let me -- can I stop you there just for a

13   second?  I don't want you to be upset about this.  This will

14   all get worked out.

15          MR. BORCIA:  But I --

16          THE COURT:  Hold on.  Just -- believe me, I

17   understand.

18          What was the issue?  If somebody tells you that they

19   are going on vacation with their family, not I have got -- I

20   have got a -- I have got an appointment at the rifle range.

21   Why -- what's the problem with waiting a week?

22          MR. MESSER:  Your Honor --

23          THE COURT:  That I really don't understand.

24          MR. MESSER:  Your Honor, first of all, I was not told

25   ahead of filing our motion that he was going on vacation.

1          THE COURT:  No, you were told though the Friday at

2    1:30.

3          MR. MESSER:  Right.  And I wasn't even in the office

4    and able to -- you know, didn't get the email.

5          But I did get it, and I did respond.  He's got other

6    in the -- people in the firm.

7          THE COURT:  No, wait.  Hold on.  Hold on just wait one

8    second.

9          If somebody -- I'm just trying to understand the

10   rationale of this.  Because I feel as strongly about this kind

11   of interaction as I do about people not responding and stiffing

12   other people in discovery.  They are all part and parcel of the

13   same thing.

14         I am not an idiot.  And I understand that we have an

15   adversary system.  And the notion that we're all going to just

16   be the dearest pals is preposterous.  We have a system that

17   breeds various things.

18         However there are certain sort of fundamental basic

19   civilities that we express towards each other, even if we don't

20   like anybody.  One is, you know, my son is in hospital.

21   Another is I have got a prearranged vacation with my family.

22   Not to spec -- and a week doesn't strike me as difficult.

23         Mr. Borcia has said from the beginning of this that it

24   is his case, and however he staffs his case (unintelligible) he

25   does, and there aren't people who could deal with this.  I just

1   don't see what waiting a week -- why waiting a week is a

2   problem.

3          If you did that and a week came and went and you got

4   screwed, you would never have to or should give him a particle

5   of consideration.  I just -- I just find it hard to fathom that

6   somebody couldn't wait a week under the circumstances.  Not

7   wait a week because I'm going to the ball game.  But I'm

8   leaving with my family on a trip that I have got pre-planned.

9          But, anyway, go ahead.

10          MR. BORCIA:  So I had my associate go over.  And I

11   explained to her the situation.  But the one -- and one of the

12   things your Honor said in the order was he only has -- no one

13   else is working on the case with him.  I mean, that's --

14          THE COURT:  That's what she told me.

15          MR. MESSER:  Okay.  But that's -- I'm the partner on

16   the case.  I have associates who help me on, for example, going

17   to court when they have to.  But my client won't pay for me to

18   have two lawyers sit with (unintelligible) in a discovery

19   conference.  And that's what this motion involves is our

20   meeting in a discovery conference.

21          THE COURT:  He said though, Mr. Borcia, that you had

22   the conference, and he got nowhere because you said you

23   were -- I mean, all I did is I looked at what he said.

24          MR. BORCIA:  I --

25          THE COURT:  I didn't have any reason to think anybody

1    didn't tell me the truth.  And I thought there was a measure

2    of -- I thought it could have been done better.

3              MR. BORCIA:  (Unintelligible).

4              THE COURT:  But I'm really bothered by the beginning

5    of this, and that's the backdrop of how I'm going -- but go

6    ahead.

7              MR. MESSER:  And I don't know what was said at the

8    hearing, and -- but that's why I wanted to be there -- to be --

9              THE COURT:  Here's what she said.

10             MR. MESSER:  Okay.

11             THE COURT:  Here's what she said.  I don't want you to

12   be upset.  This is not worth you -- a minute of your

13   upset-ness.  It will all be fine.  All I wanted to do was to

14   get somebody's attention because I told you to produce the

15   stuff.  It looked to me, as it was portrayed to me, like what I

16   wanted to be done wasn't being done.  I said to the young lady

17   who was just delightful, she couldn't have been lovelier, that

18   I didn't care if there were -- she said there were 20,000.  I

19   said this isn't the IBM case where they produce millions of

20   documents.  You can get this done.  The way the materials were

21   presented to me, it did sound like they were significant and

22   that they weren't on the margin of relevancy.  And I wanted

23   this stuff to get done, and the only way I knew to do it was to

24   say, you know, just -- well, let's get it done.

25             MR. MESSER:  I understand that, and --

```
1         THE COURT:  And I thought that -- well --

2         MR. MESSER:  Well, I just --

3         THE COURT:  Go ahead.

4         MR. MESSER:  So what I asked her to do is tell your

5    Honor first, if I could have a chance to file a written

6    response to this.  I don't know if she did that or not.

7         THE COURT:  She sure did.  I said no --

8         MR. BORCIA:  Okay.

9         THE COURT:  -- because I didn't think I needed a

10   response.  All I cared about was the documents.

11        And in terms of the sanctions, I could deal with that

12   later, which is where we are.

13        MR. BORCIA:  Okay.

14        THE COURT:  You have done what I wanted you to do.

15        MR. BORCIA:  Okay.

16        THE COURT:  Now I'm troubled though by what you are

17   telling me.

18        But go ahead.

19        MR. MESSER:  And then what, what I told her was about

20   the document -- because no one -- just like Mr. Messer was

21   alone in our discovery conference, I was alone.  She wasn't

22   there.  She couldn't tell you what was said and how it was

23   said.

24        The issue of what happened on these forms -- if you

25   recall these forms were not requested.  We came into court the
```

1    day after our production of documents and responses to

2    interrogatories.  We responded timely to what you requested.

3           Then he started asking about these forms, and he had

4    not requested the -- all these additional forms.  Remember,

5    this is redundant information.

6           What I said at that time --

7           THE COURT:  He explained to me that it was not because

8    the consent aspects of this could not be ascertained from

9    the -- from your spreadsheets.

10          MR. BORCIA:  Well, they -- I gave him the sample

11   forms, which he asked for in discovery.  The sample

12   forms -- you have the information on there.  That's -- what

13   happened at the conference was, if you recalled the order,

14   (unintelligible) no order saying produce these by a certain

15   date.  What we agreed to do was, I was going to a meet with him

16   and talk about our production.  Okay?  And we did that.  We did

17   that on March -- I'm sorry, April 19th.  The status was on

18   June -- on March 6th.

19          After the status hearing because the -- remember, the

20   status hearing was the first time he told me he wanted all

21   these forms.  I didn't know when we were in court that day what

22   this all entailed.

23          I called my client and said, he wants all the forms.

24   My client says, this is going to be really hard.

25          THE COURT:  Because there's --

1          MR. BORCIA:  Here's why.

2          THE COURT:  They are (unintelligible).

3          MR. BORCIA:  Well, they are (unintelligible).  And

4     they are not just at the stores, the actual --

5          THE COURT:  They were in the possession of individual

6     people.

7          MR. BORCIA:  Yes.  In envelopes -- okay.

8          The other issue, which I didn't know at that time, was

9     these forms have other information on them.  What happens is

10    when the person fills out their name and address, it also has

11    on the back a blank where the employees for many customers will

12    write information about the customer.

13         I have examples here.  For example, one of them is --

14    which I have, we produced yesterday, was May 12th.  On the back

15    it has information about the customer.  It says, she has a high

16    school luncheon May 31st.  She called -- so these cards, many

17    of them, have information that these employees use on a day-to-

18    day basis, that they are using in their business to make sales

19    calls to -- it has like the women's sizes on there.  So they

20    use this information.

21         So my client says, well, if you take these from us, we

22    can't --

23         THE COURT:  We can't --

24         MR. BORCIA:  -- use them.

25         THE COURT:  -- function.

1      MR. BORCIA:  So I had a meeting with Mr. Messer.  And

2  I explained to him at our meeting in my office on April 19th, I

3  said, Joe, I said, here's the situation, there is tons more of

4  these than we thought they were.  They are all over the place.

5  They all have basically the same information in terms of what

6  he is looking for.  So I don't know why you need these cards.

7      But if you want them, what I suggest we do is give you

8  samples.  If you want to pick, for example, seven stores or

9  whatever you want, I'll agree to produce reasonable samples of

10  them, however many you want.  We shouldn't have to produce

11  50,000 documents because they all -- and he said to me, he

12  would consider that, that sounded reasonable, and he would get

13  back to me.

14      THE COURT:  And then you were going to go away.

15      MR. BORCIA:  Yeah.  Yes.

16      Now a few days later, he left me a voicemail and said,

17  had he considered our proposal, he wants all the forms.

18      And I said to my client, start gathering the forms,

19  which they did.  This was probably late April.  And this took a

20  while because remember they are all over the place.  And so my

21  intention was to produce them to him.

22      But to suggest that somehow we have not been

23  cooperative in discovery is not true.  We answered his

24  discovery when we were supposed to.  We produced the

25  information we were supposed to produce that he requested.

1   This is voluntary information that we're giving him that he did

2   not request in his document requests.

3          And, you know, there is more in here that I can go

4   through, but I just -- I was amazed by what was in his order is

5   certainly not what happened in terms of what my understanding

6   of our meeting was.  We were going to work cooperatively and

7   try to get to the situation where it didn't overburden my

8   client.  My client right now is losing money because I have

9   these forms.  I have 50,000 of them in the office.  Their

10  employees can't use any of them.

11         THE COURT:  Well, let's get them -- get them --

12         MR. BORCIA:  Well --

13         THE COURT:  -- get them copied and back to him.

14         MR. BORCIA:  I will.  But my point is we had a very, I

15  thought, cooperative meeting.  And, you know, his --

16         THE COURT:  But the motion, Mr. Borcia, did not convey

17  even -- it conveyed a very different (unintelligible).

18         MR. BORCIA:  I know that, and that's why I want -- and

19  his -- what I think is appalling, Judge, is in his motion he

20  attaches a letter which postdated our meeting, and the letter

21  is dated -- this is Exhibit D to his motion.  And he summarizes

22  --

23         THE COURT:  Let me take a look.

24         MR. BORCIA:  Okay.

25         THE COURT:  Yeah.  Go ahead.

1        MR. BORCIA.  He is summarizing our meeting.  And he

2    makes the statement at the bottom of page 1, you did not

3    respond to my request until our April 19th meeting.  At which

4    time I told him Bijora would not produce the forms.

5        THE COURT:  That's what was represented to me.

6        MR. MESSER:  Absolutely not true.  I have told him we

7    would produce the forms to him.

8        THE COURT:  Mr. Messer, is this -- just on that one

9    thing, is that -- is that statement accurate --

10        MR. MESSER:  Yes, it is.

11        THE COURT:  -- or is inaccurate --

12        MR. MESSER:  That's exactly --

13        THE COURT:  So you're telling Mr. Borcia his rendition

14    is just not true, not accurate.

15        MR. MESSER:  He told me he would not produce the

16    forms.  He said that they were in the -- in the various --

17        THE COURT:  Stores.

18        MR. MESSER:  -- stores and with these folks, and he

19    said he wasn't going to produce them.

20        MR. BORCIA:  We had a discussion about samples.

21        Counsel, you remember you agreed to consider taking

22    samples.

23        MR. MESSER:  And I did, and I -- and I thought about

24    it, and I said there is no way that we can determine whether

25    the consent was provided, which was required by the TCPA.  And

```
 1   I left you that message.  And then I write you this letter, and
 2   you didn't respond.  You continued --
 3          THE COURT:  The letter is dated April 26th.  And,
 4   Mr. Borcia, when did you go on your vacation?
 5          MR. BORCIA:  I went on vacation --
 6          THE COURT:  Oh, this is -- I'm looking at the dates,
 7   the -- what are the dates -- what's the date --
 8          MR. BORCIA:  The date of my vacation was
 9   May -- starting that Friday, I think --
10          THE COURT:  Okay.  Look, let me ask you, if April
11   26 -- and then you left on May what?
12          MR. BORCIA:  May 4th.
13          THE COURT:  Okay.  And the motion that came in --
14          MR. BORCIA:  Filed --
15          THE COURT:  -- at 9:00 o'clock was filed what date?
16          MR. BORCIA:  May 3rd.
17          THE COURT:  May 3rd.
18          MR. MESSER:  But, your Honor, just for the record, on
19   -- I said in my --
20          THE COURT:  Because you then left.  Right, I got it.
21          MR. MESSER:  I said in my April 26th letter that if I
22   don't receive information -- the information and documents that
23   you promised by May 2nd that I'd have no choice but to file a
24   motion to compel.  I didn't want to, but I --
25          THE COURT:  Oh, I understand.
```

1           MR. MESSER:  So, I mean, it is not as if I --

2           THE COURT:  I understand.

3           MR. MESSER:  I wasn't planning -- I had no idea he was

4      going on vacation, for one thing.

5           You know, number two, I had been waiting for this

6      stuff for a long time.  I disagree with counsel as to when

7      their request originally came.  But it was very clear he was

8      ordered to produce them at the hearing months ago.

9           THE COURT:  Well, it wasn't months ago.

10          MR. MESSER:  Well, it was the --

11          THE COURT:  What's the date of the order?

12          MR. MESSER:  It was March 6th date.

13          THE COURT:  All right.

14          MR. BORCIA:  I wasn't ordered to produce them.  In

15     fact, your Honor said at that order -- that hearing, you said

16     if he has asked for them, you should produce.  If he hasn't

17     asked for them, don't produce them.  That was what your Honor

18     said at the transcript hearing.

19          And the order doesn't say anything about production.

20     The order says status hearing held, that's it.  Discovery --

21     and you ordered us to meet, and we met.  And I thought we had a

22     very good meeting.  I still don't know, Judge, why he wants

23     50,000 pages.  It doesn't make any sense to me.  These forms

24     are basically all the same thing.  It is just different names

25     on them.

```
 1              THE COURT:  Well, but he -- the question is whether

 2    each person consented.  That's what I thought it was all about.

 3              MR. BORCIA:  The forms -- the forms say that.  The

 4    forms say -- I have them all here.  (Unintelligible).  They all

 5    have the same language.

 6              THE COURT:  What do they say?

 7              MR. MESSER:  No, they don't.

 8              THE COURT:  Well --

 9              MR. MESSER:  That's not true.

10              THE COURT:  Well --

11              MR. BORCIA:  They say -- and I can -- they are all --

12    I brought a group of them here.  I haven't gone through all of

13    them.

14              THE COURT:  No, I know.

15              MR. BORCIA:  But they say -- this is the -- the VIP

16    form.  This is the card.

17              THE COURT:  Right.

18              MR. BORCIA:  And it says under cell phone, by

19    providing your mobile, you agree to receive text messages from

20    Akira.  And it says more about roaming charges may apply.  But

21    that's --

22              THE COURT:  I mean, I thought -- as you were telling

23    me about the -- all this personal information that's there

24    would sort of certainly be relevant to your defense.

25              MR. BORCIA:  Well, no, that -- the personal
```

1    information deals with, like what the customers -- what they --

2    maybe what they ordered or what their shoe size is that the

3    sales people use in the back.  Now I can show you the sample

4    here where they will have --

5         THE COURT:  So it is not information the customer

6    gives, it is information they simply know by virtue of the

7    interaction.

8         MR. BORCIA:  Right, right.

9         THE COURT:  Okay.

10        MR. BORCIA:  The customer signs the card, and then

11   the -- and then afterward they give -- and the salesperson then

12   can either add more to it or not add more to it.

13        THE COURT:  Mr. Messer, I -- I mean, it doesn't mean

14   that it is not relevant.  But if all the cards are the same and

15   they do say that, by -- and are those cards signed then by the

16   customer?

17        MR. BORCIA:  They are not -- I don't think they are

18   signed, Judge.

19        THE COURT:  Let me see one -- can I see one --

20        MR. BORCIA:  Sure.

21        THE COURT:  -- like that that has that notation on it

22   that we're talking about?

23        MR. BORCIA:  There it is.

24      (Brief interruption.)

25        THE COURT:  Oh, I see.  Cell phone.  By providing your

```
 1    mobile, you agree to receive text messages from Akira.

 2            MR. BORCIA:  Yes.

 3            THE COURT:  And something dates -- rates may apply.

 4    To stop --

 5            MR. BORCIA:  Messages.

 6            THE COURT:  -- messages, reply stop to whatever.

 7            MR. BORCIA:  Yeah.

 8            THE COURT:  Okay.  So your position is that when they

 9    gave -- of course, one wouldn't necessarily -- this is -- whose

10    handwriting is on these cards?

11            MR. BORCIA:  Oh, I think it is -- I think it is the

12    customers.

13            THE COURT:  Okay.  So if in fact you prove somehow

14    that every one of these cards is in a customer's name and they

15    gave the cell phone, I mean, this -- it is certainly relevant

16    to their defense.

17            MR. MESSER:  Your Honor, that's -- that is right,

18    that's relevant to their defense.  But there are -- that's one

19    of seven different types of cards.  That's the only one of the

20    types of cards that were produced that I looked at yesterday

21    that has that very faint language on there.

22            The others have no such language.

23            THE COURT:  Okay.

24            MR. MESSER:  No such consent-type language.

25            MR. BORCIA:  Well, and the --
```

1    THE COURT: All right. Here, let's do this. I think

2 -- I think the materials are relevant. You know, I still don't

3 think -- I did understand what was involved, and I did not -- I

4 do not think, now that I have heard it more, that this is

5 unduly burdensome within the meaning of the cases. That's

6 really not the issue because they have all been produced. And

7 the issue is not how much this is going to cost. Mr. Borcia is

8 going to work out a fee -- a number with you. And if it comes

9 out that it is, you know, something more than a copy service,

10 so be it. They -- this is their -- they claim their

11 livelihood. Without these cards they don't function as

12 efficiently as they otherwise would, and I understand that.

13    And I -- I would be reluctant to let this out. And I

14 have a case where we're doing code searches with a very

15 complicated source code in a patent case, and they are not

16 letting people take anything out of anywhere. Now I understand

17 that source code is different, but on some level it isn't. It

18 is just not -- this isn't secret in the same way. But if those

19 cards gets lost, their business is profoundly affected.

20    So the only question for me then is what do I do about

21 this order and the question of fees?

22    MR. MESSER: Your Honor, can I just make one comment?

23    THE COURT: Yeah, sure.

24    MR. MESSER: Regarding this issue of the vacation,

25 again, I did not know about a vacation ahead of time when we

1  set the motion.  In fact in my correspondence, my most recent

2  correspondence prior to the motion, I warned of the motion and

3  got no response to that.

4       That said, I should not have to wait for Mr. Borcia.

5  He's got other people in his firm, other people who have

6  appeared before your Honor on this case.  And I have people in

7  my -- in my -- who filed appearances in my firm that can cover

8  when I'm gone.

9       THE COURT:  I don't disagree.  I don't disagree with

10  you.

11       MR. MESSER:  I was not --

12       THE COURT:  This is a abstract matter.

13       MR. MESSER:  The point I'm trying to make is I was not

14  trying to take advantage of the fact he was out.  I was trying

15  to move the case forward knowing he had other people in the

16  office.

17       MR. BORCIA:  And this is a case where counsel has

18  recently added a defendant.  There are motions to dismiss the

19  complaints that are pending.  There is a discovery -- there is

20  no imminent discovery cutoff.  There is no reason in the world

21  he couldn't have waited one week for me to come back.  And he

22  knew he and I were in that meeting alone, he knew that.  And I

23  don't agree for a minute he can say, I shouldn't have to wait.

24  That's a common courtesy that should have been extended.

25       THE COURT:  I don't -- I don't disagree with you, I

```
 1   don't.
 2           Well, the materials weren't asked for initially,
 3   right?
 4           MR. MESSER:  That's not my position.  I -- if you read
 5   the discovery request --
 6           THE COURT:  Why don't you read the discovery request.
 7           MR. MESSER:  One of them --
 8           THE COURT:  Don't read all of it.  Read the part you
 9   think governs the cards.
10           And we did -- Mr. Borcia says we discussed this, and I
11   rightly or wrongly --
12           MR. MESSER:  You said -- what you said --
13           THE COURT:  -- agreed -- or I didn't -- I just said,
14   well, if it wasn't --
15           MR. MESSER:  You said it could be read either way.
16           MR. BORCIA:  No, no.  What you said was, and this is
17   on page 17 of the transcript when we argued about this, and you
18   said, I think -- this is on page 17.  I'll read it before.
19           The Court:  Page 16.  Now you want each individual
20   form produced separately, is that what you're asking?
21           Mr. Messer:  Yes, because --
22           The Court:  Because that's different from --
23           And I said, that was not asked for.
24           And you said, that is not -- I think
25   Mr. Borcia's -- his reading is a fair one, and it wasn't
```

1   asked.

2       That's exactly what you said at that hearing when you

3   were reading the document requests.

4       MR. MESSER: Well, here's the request. A copy of any

5   and all --

6       THE COURT: Well, I am not -- I don't want to read my

7   own self myself. If that was my reaction when I read it, that

8   was my reaction. And if it was wrong, it was wrong. But at

9   least it got us past the hurdle of was it or was it not asked

10   for. I don't remember exactly what it was. But my -- that was

11   my reaction at the time that it was -- Mr. Borcia's was a fair

12   reading of it.

13       Here we are. So the question is you -- you know,

14   you're being -- and I thought it was very magnanimous

15   that -- and I didn't think your rates were bad.

16       The question now is should you get anything. There is

17   nothing wrong with the rates. There is nothing wrong with the

18   amount.

19       The question really is is given everything that I have

20   now heard and given where we began this, which is with a

21   somewhat equivocal set of requests as they pertain to the

22   cards, is this the kind of thing, the loser pays kind of

23   concept that Judge Easterbrook was talking about and that Rule

24   37 talks about? And I'm not so sure now that it was.

25       I had a -- when I wrote this, I had a very different

1  sense of things, and I did not quite -- I mean, I didn't know

2  the background of all this.

3          But here's what I am going to do.  I'm -- you have got

4  the materials.  You're going to get what you need.  That was

5  really my design, and that was all I cared about.

6          I -- I'm not eager to have anybody sanctioned for the

7  sake of doing it.  I don't do that.  And I think I have only

8  sanctioned one or two people since I started this.  And now in

9  hindsight this does not seem to me -- wait, I have to take

10  this.  I'm sorry --

11          Hi.  Oh, wonderful.  What about the hearing?

12          Oh, so, he -- yeah, no, no.  All right.  Well, let me

13  call back then, okay?  Bye.

14          Sorry I had to take that.

15          I'm going to vacate the order of -- of 11--29-11,

16  which is Number 56.

17          Is that the order?  Wait, hold on.

18          THE CLERK:  May 8th.

19          THE COURT:  May 8th.  Sorry.  I looked at the wrong

20  order.

21          I'll -- I'm going to -- I do think that the way this

22  evolved there is a substantial justification for what occurred,

23  and that's what the test is.  And I don't think Mr. Borcia was

24  trying to stiff you.  He has a particular -- he came away with

25  a particular impression of your Rule 37 conference.  You came

1    away with a slightly different impression.  I don't have -- and

2    I am -- and the same token -- by the same token, Mr. Messer, I

3    don't think that you're one of those guys who is sandbagging

4    somebody and waits until they go away or files a motion the

5    night before somebody is having a baby or something like that.

6    I don't think that was your intent.

7            But here we are, and so I'm going to vacate the order

8    in the -- in its entirety.

9            You can put in the order that Mr. Borcia has

10   represented that all the cards have been turned over.  And that

11   was all I cared about.  So that is, as Judge Norgle likes to

12   say, functus officio.

13           MR. BORCIA:  Thank you, Judge.

14           THE COURT:  All right.  You got what you wanted.

15           And now what's our next step?

16           MR. BORCIA:  I think -- well, one thing we should --

17           THE COURT:  Mr. Messer, when I say you got what you

18   wanted, I mean, you got the cards, and that's all I cared

19   about.

20           MR. MESSER:  Yeah.  The next step is to get copies of

21   the cards.

22           MR. BORCIA:  And we'll get those -- I mean, my client

23   wants them back.  So I'm going to get that done as soon as I

24   can.

25           THE COURT:  Do that immediately.

```
 1              MR. BORCIA:  Right, okay.

 2              MR. MESSER:  And then I think one thing we should talk

 3    about is, you know, there are a number of depositions that were

 4    noticed and subpoenas issued before Opt IT got involved in the

 5    case, and those were all --

 6              THE COURT:  But what?

 7              MR. MESSER:  Before the new defendant, Opt IT,

 8    Ms. Harell's client, got named in the case.

 9              THE COURT:  Who is the -- what's his deal?

10              MR. MESSER:  Opt IT is the software provider for the

11    texting and the third party.  So they were not made --

12              THE COURT:  Why is -- what did your client do?

13              MS. HARELL:  They are merely the software provider

14    through which the messages pass.  And we currently have --

15              THE COURT:  Well, why are they a defendant?

16              MR. MESSER:  They sent their own text message, your

17    Honor.

18              MS. HARELL:  We --

19              MR. MESSER:  Without prior consent of both the

20    plaintiff, and we assume that they did that with respect to the

21    class members as well.

22              MS. HARELL:  We currently have a motion to stay before

23    Judge Norgle.  There was a hearing and so --

24              THE COURT:  And the stay would be for?

25              MS. HARELL:  To refer this to the FCC under the
```

1  (unintelligible) jurisdiction doctrine as a common carrier.

2       THE COURT:  Oh, I see.

3       MR. BORCIA:  There is a briefing schedule he entered.

4  We have got a status hearing in July.

5       But I think so the next step after we produced the

6  documents themselves, I think we can start doing depositions.

7  I'm not sure what Opt IT's position is on discovery.  But my

8  people are going to be available for deposition.  We'll want to

9  take the plaintiff's deposition.  And that will go on.  But I'm

10 not sure --

11      THE COURT:  I think we should go on.  I don't want to

12 wait.

13      MR. MESSER:  I'm fine with that.  I'm not sure what

14 Opt IT wants to do in terms of --

15      THE COURT:  Well, what do you want to do?

16      MS. HARELL:  I think Judge Norgle had encouraged us to

17 discuss the settlement.  And I know my partner, Ms. Forsheit --

18      MR. MESSER:  She called yesterday, and I returned her

19 call and haven't heard back.

20      THE COURT:  Now Mr. Borcia, I suspect, has a -- well,

21 what's your view, Mr. Borcia?  What do you want to do?

22      MR. BORCIA:  Well, I -- I'm happy to proceed.  I'm

23 also happy to have a stay if that's what other -- everyone else

24 wants to do.  But your Honor has now set a discovery cutoff

25 for, I think, November.

1    So we have had --

2    THE COURT:  But I control the dates.

3    MR. BORCIA:  Yeah.  So I -- I'm okay with going

4 forward.  But if counsel wants to see what the judge

5 (unintelligible) about this motion to dismiss, I'm happy to

6 wait for that too.  I don't know what they want to do.

7    MS. HARELL:  This is our preference.

8    THE COURT:  Would it be -- would it be helpful to

9 getting the case settled to take the deposition of the

10 plaintiff or really not?

11    MR. BORCIA:  I don't --

12    MS. HARELL:  (Unintelligible).

13    MR. BORCIA:  I don't really think -- I mean, I know

14 her story.  I don't think that's going to settle the case,

15 but --

16    THE COURT:  It is up to you.  I just was wondering --

17    MR. MESSER:  I -- you know, I suspect given what she

18 has alleged, I know what the case -- what she's going to be

19 saying, so I don't -- I don't know what Opt IT's --

20    MS. HARELL:  (Unintelligible).

21    THE COURT:  How many calls did she get?

22    MR. MESSER:  Many.  I think it is in the complaint, if

23 I can find the complaint.

24    Maybe -- there is 50 or 70 texts.

25    THE COURT:  Over how long a period?

1          MR. MESSER: Beginning September 2009 continuing

2   through July 28th, 2011.

3          THE COURT: Not that it is relevant, I don't know, but

4   were there ever complaints registered or requests to stop?

5          MR. MESSER: Yes, there were, and they were ignored.

6          THE COURT: Okay.

7          MR. MESSER: I mean, Bijora sent over 50 -- or sent 50

8   text messages to plaintiff's cellular number.

9          MR. BORCIA: My understanding --

10         MR. MESSER: After plaintiff sent her request not to

11  be texted.

12         THE COURT: I got it.

13         MR. BORCIA: My understanding, Judge, and I -- and Opt

14  IT may know more about this than I do. My understanding is the

15  plaintiff didn't -- you recall on the card it said, if -- reply

16  to stop. I mean, on the card it said, hit reply, the plaintiff

17  didn't do that.

18         MR. MESSER: Well, what she -- what she did was, my

19  understanding at least is, she sent an email or separate text

20  that said stop --

21         THE COURT: Stop.

22         MR. MESSER: -- emailing me.

23         MR. BORCIA: And the way I -- my understanding it

24  works is, if you don't follow the format --

25         THE COURT: You don't get -- it doesn't stop.

1    MR. MESSER:  Counsel -- you have already told me that

2    she didn't sign a card.  You don't have a card for her.  So how

3    could she know to say exactly what the -- first of all, she'd

4    have to remember what that minute little text said on the card

5    if she did fill out such a card.  But here we have a situation

6    she's not in the register, she didn't fill out a card.

7    THE COURT:  Oh, I see.  Okay.  So I got it.  It is

8    sort of a wash.

9    All right.  Well, it is what it is.  Tell me --

10   whatever you want to do, I'll do.  If -- I guess if we go

11   forward and your folks stay in the case, you're going to have

12   the right to do the discovery all over again because you're not

13   a participant, so I don't think that that's bene- -- I mean, it

14   is not right to do it, and it is pointless.  It causes

15   tremendous burdens to everybody, so maybe we should stay this.

16   MR. MESSER:  Well, your Honor, there has not been a

17   ruling on the stay.  I mean, it has been briefed.

18   MS. HARELL:  It is not fully brief -- (unintelligible)

19   reply is (unintelligible).

20   MR. MESSER:  That's true.  It is the briefing -- it is

21   in the middle of the briefing I guess is the way to put it.

22   THE COURT:  Well, this is an 11 case.  It is not like

23   it is a brand new case.  I just -- Judge Norgle is very

24   efficient.

25   MR. BORCIA:  There is more complications, Judge, in

1    the case.  I don't --

2          THE COURT:  Well, what do you -- tell me --

3          MR. BORCIA:  Judge, their complication is the

4    plaintiff moved to certify a class before Opt IT got named

5    (unintelligible).  That motion was granted in March.

6          We have appealed that decision to the Seventh

7    Circuit.  That appeal is pending whether they are going to take

8    the appeal or not.  The Seventh Circuit recently granted leave

9    to file a reply brief in support of the (unintelligible) leave

10   to appeal.

11         But after the Court granted certification, the

12   plaintiff moved to amend their -- his complaint.  And he not

13   only did that to name Opt IT, he also modified the class

14   definition that the Court had previously certified.

15         THE COURT:  How do you do that?

16         MR. BORCIA:  I don't know how you do that, but he did

17   it.

18         THE COURT:  No, but if the -- that aspect of the case

19   is in the Court of Appeals --

20         MR. BORCIA:  Well, the Court of Appeals hasn't taken

21   it yet.  It is a petition for leave to accept the appeal.  They

22   haven't actually accepted the appeal.

23         THE COURT:  Oh, so you don't do it by notice of

24   appeal, it is just -- is this just an interlocutory review or

25   is it --

1        MR. BORCIA:  It is --

2        THE COURT:  -- or is it under some special provision

3 of the class action (unintelligible)?

4        MR. BORCIA:  Yes, it is.  And it is petition for leave

5 to accept.  So that's pending.  So we're --

6        THE COURT:  It is not a 1292(b) thing.

7        MR. BORCIA:  No.

8        THE COURT:  Okay.  So we're kind of in limbo in terms

9 of the -- what is -- because I don't believe --

10       Pat, will you call me?  I'm sorry, I can't -- okay.

11       MR. BORCIA:  The class certification only applied to

12 my client, it didn't apply to Opt IT.  So I think Opt IT would

13 have the argument it doesn't apply to them.  I'm not sure at

14 this point in time if there is a class or not because the

15 plaintiff now has --

16       THE COURT:  Mr. Messer, what do you think?

17       MR. MESSER:  We believe there is a class.  The Court

18 has already determined that there is a class.  We -- we have

19 objected to the appeal.  We're -- I mean, there is already a

20 class that's been certified.

21       MS. HARELL:  But there is no class with respect to Opt

22 IT.

23       MR. MESSER:  No, that's true.  That's true.  We have

24 not filed -- we have not filed a motion for class cert with

25 respect to Opt IT at this point.

1    THE COURT:  So it is just the single lady.

2    MR. MESSER:  Excuse me?

3    THE COURT:  It is just a single plaintiff.

4    MR. MESSER:  It's -- there is -- where the class has

5  been certified, that's correct.

6    MR. BORCIA:  But now we have, which I have never seen,

7  a different class definition in the complaint that's

8  already -- different than what has already been certified.  I

9  don't know how you do that, but that's -- that's the status of

10  the pleadings.

11    MR. MESSER:  It is the basic same fundamental class in

12  definition and --

13    THE COURT:  But not against Opt IT, against her

14  client.

15    MR. MESSER:  Right, her --

16    THE COURT:  She is just an additional defendant with a

17  single count.

18    MR. MESSER:  Right.

19    THE COURT:  Or claim.

20    MR. MESSER:  It is much more efficient to keep -- and

21  it is the same (unintelligible).

22    THE COURT:  Because it is all part of the same thing.

23    MR. MESSER:  Right.  Exactly.

24    MR. BORCIA:  But my point is, Judge, if the class

25  definition changed, not just adding Opt IT, the class

1   definition changed between what the Court certified and what

2   the amended complaint says, so I don't know what the class is

3   if there is a class.

4           THE COURT:  Well, that -- fortunately I don't have to

5   deal with that.

6           MR. BORCIA:  I know you don't, but I'm just saying --

7           THE COURT:  I understand it is the same.

8           MR. BORCIA:  -- there is a lot of complications.

9           THE COURT:  Well, let me just think this through for a

10  second.

11          Well, you're in.  I mean, he's let you -- he's -- I

12  will -- he's granted the motion to amend, so you're in.  But --

13  and you're not in on the class aspect, you're in just because

14  you're in because you sent a bunch of texts --

15          MR. MESSER:  Right.

16          THE COURT:  -- to this lady.

17          MR. MESSER:  Although they filed --

18          MS. HARELL:  We --

19          MR. MESSER:  -- just so you understand, they filed a

20  motion to dismiss, and so we're litigating that.

21          MS. HARELL:  (Unintelligible)

22          THE COURT:  And that -- right.  So the question -- so

23  is this really any different?  I mean, I'm not going

24  to -- seldom do you -- oh, this is sort of a jury -- is

25  (unintelligible) jurisdictional kind of motion?

1        MS. HARELL:  Our motion to dismiss?

2        THE COURT:  Yes.

3        MS. HARELL:  It is a 12(b)(6) on failing --

4        THE COURT:  Oh, 12(b)(6).

5        MS. HARELL:  And then in the alternative a motion to

6   stay and refer the matter to the FCC.  There is a similar case

7   pending before the FCC.

8        THE COURT:  What about that, Mr. Messer?  You're

9   opposing that motion?

10        MR. MESSER:  Absolutely.  There is no support for a

11   motion to stay in a circumstance like this.  It is a

12   fundamentally different case than that FCC matter.  This is a

13   situation where Opt IT sent text messages to the class members

14   without prior consent, express consent as required under the

15   TCPA.

16        Regardless of what Bijora did, Opt IT set its own --

17   sent it its own text message.

18        THE COURT:  Why should we -- why should I stay

19   discovery?

20        MR. MESSER:  I see no reason.

21        MS. HARELL:  (Unintelligible).

22        THE COURT:  She's in.  It is not any different than

23   any other motion to dismiss.

24        MR. MESSER:  Exactly.

25        THE COURT:  I --

1          MS. HARELL:  Your Honor, if I may?

2          THE COURT:  Yes.

3          MS. HARELL:  It is actually -- it is fundamentally

4    different than -- because there is support in the FCC -- with

5    an FCC doctrine that if we are the ones sending -- if we

6    sent -- he alleges that Opt IT sent a single text message to

7    Ms. Strickler.

8          THE COURT:  No, not to the class members, just to her.

9          MS. HARELL:  To Ms. Stickler.

10         THE COURT:  Right, Mr. Messer?

11         MS. HARELL:  (Unintelligible).

12         MR. MESSER:  But that's the plaintiff at this point,

13   that's correct.

14         MS. HARELL:  Excuse me.

15         However, there is support within FCC materials that

16   says, since our client Bijora was the one with the position to

17   get consent from the client, Opt IT should also be exempted

18   from --

19         THE COURT:  No, no, no, I understand.  I understand

20   completely.

21         MS. HARELL:  Yeah.

22         THE COURT:  But there is just -- there is -- if this

23   goes back to the -- FCC?

24         MS. HARELL:  Uh-huh.

25         THE COURT:  Whatever you find out here will be

```
 1   of -- will be relevant to whatever you're going to do there.  I
 2   don't see any reason to stay this at all.  This is not what I
 3   thought it was, so I'm not going to stay discovery.  Discovery
 4   should go on.  Go ahead.
 5           I think you ought to participate.  If you choose not
 6   to participate, I'm not going to let you redo it.
 7           MS. HARELL:  Okay.
 8           THE COURT:  If you're out, you're out.  And I think
 9   you should just go ahead.
10           Now some of this stuff, the class aspects of this,
11   really don't affect you, right?
12           MS. HARELL:  (Unintelligible).
13           MR. MESSER:  There would be a separate class with
14   respect to Opt IT, the people who they texted, who they sent --
15           THE COURT:  But right now it is not a class --
16           MR. MESSER:  That's --
17           THE COURT:  -- case as to her.
18           MR. MESSER:  That's accurate.  That's accurate.
19           THE COURT:  Okay.  I'm not going to stay discovery.
20           Put in the order discovery is not stayed -- will not
21   be stayed.
22           And I think you guys go ahead and just do whatever you
23   would otherwise do.  It is very difficult for me to tell
24   fabulously experienced and very decent lawyers what to do, so I
25   try not to ever do it.  But I do think if you don't get a
```

1    response going either way, try again.  One can feel after a few

2    times whether you're being -- I can feel whether you're being

3    stiffed or whether this is just a good faith, I'm busy and I

4    can't quite get to you.  People don't have the obligation to

5    respond 30 seconds after they receive an email.  I understand

6    exactly where you're coming from in this case.  That's all I'm

7    asking you to do is to try to resolve the thing so that there

8    is some -- so that Mr. Borcia knows you're going forward and he

9    doesn't have to worry or wonder or think you have had -- and

10   the same goes true for you.

11            I just think writing letters is a monstrous waste of

12   time.  People should talk to each other.

13            MR. BORCIA:  The last thing I want to bring up, Judge,

14   is on these cards -- and we just asked this the last time as

15   well.  And I asked for a protective order.  I don't want this

16   getting out to the public.  And I know counsel is not going to

17   be broadcasting these things.  But I think there should be some

18   agreement between us that these cards will be used for this

19   lawsuit only.

20            THE COURT:  Oh, I'm happy to do that on my own.  The

21   order will provide that these cards -- that the discovery that

22   has been provided by Mr. Borcia in the form of the

23   approximately 50,000 customer cards -- can I call them that?

24            MR. BORCIA:  Yes.

25            THE COURT:  -- may not be utilized for any purpose

```
 1   outside this litigation without leave of Court or agreement of
 2   counsel.
 3           MR. BORCIA:  And also --
 4           THE COURT:  I don't see anything wrong with that.
 5           MR. BORCIA:  And also the electronic database, which
 6   has more information on it, but that -- but has similar
 7   information.
 8           THE COURT:  And put in there, and the electronic
 9   database that is related to the cards.
10           Will that cover it?
11           MR. BORCIA:  Yes.
12           THE COURT:  Mr. Messer?
13           MR. MESSER:  That's fine.
14           THE COURT:  I mean, if you guys --
15           MR. MESSER:  I have said that -- I said that --
16           THE COURT:  Okay.
17           MR. MESSER:  I said that last time, I'll say it again.
18           THE COURT:  I thought you did.
19           MR. BORCIA:  I just want to make sure it is clear.
20           THE COURT:  If you want to have a more, you know, do
21   people get to destroy the stuff, do they have to
22   return -- however you want to handle it, I don't care.  If you
23   want to give me a more -- a bigger order, a more complicated
24   order --
25           MR. BORCIA:  I can do that.
```

1         THE COURT: Okay. I don't need a nine-page order.

2 This is not -- this is not, you know, source codes for Apple.

3         MR. BORCIA: Right.

4         THE COURT: I'll sign whatever you folks agree to.

5         MR. BORCIA: But I did send them a draft, and he

6 didn't agree to it. But we can work with each other --

7         MR. MESSER: I never saw a draft.

8         MR. BORCIA: I thought I did. But if I didn't --

9         THE COURT: If you can't do it and you want something

10 more elaborate and I can't -- this is so simple. You have to

11 agree on this. I mean, you must.

12         MR. MESSER: I don't disagree.

13         THE COURT: Okay. You know, you want this stuff all

14 back at the end, then put that in. If you will agree to have

15 it destroyed, I don't know whatever -- whatever suits your

16 pleasure.

17         MR. BORCIA: I agree, your Honor.

18         THE COURT: Okay. And try to be a little

19 more -- Mr. Borcia's problem is he's -- he's very successful

20 and very, very busy, and so sometimes things -- it is hard to

21 keep all these balls in the air. That's not your problem. So

22 I don't know what else to say.

23         MR. BORCIA: Thanks for your time, Judge.

24         THE COURT: I'm sorry for the consternation you were

25 caused. But maybe this will have a sobering effect on your --

```
 1   on going forward --

 2           MR. BORCIA:  I hope so.

 3           THE COURT:  -- going forward basis.

 4           MR. MESSER:  Thank you.

 5           MS. HARELL:  Thank you.

 6           THE COURT:  You know, it is like Alex Rodriguez, from

 7   time to time you have to throw at his head.

 8       (Laughter.)

 9           THE COURT:  Maybe that's not the best example.

10           MR. BORCIA:  Hopefully you get out of the way in time.

11           THE COURT:  All right.

12           MR. BORCIA:  Thank you, Judge.

13           MS. HARELL:  Thank you.

14           THE COURT:  Okay.

15           Wait.  Do we have another date?

16           MR. BORCIA:  Yeah.

17           THE COURT:  We do.  Okay.

18           MR. MESSER:  (Unintelligible).

19           THE COURT:  No?  Well, let's set some.

20           MR. BORCIA:  (Unintelligible).

21           THE COURT:  Thirty days?

22           MR. BORCIA:  Sure.

23           THE COURT:  I mean, I don't want to make everybody

24   come back just for nothing.  We can do 45.  Whatever you guys

25   want to do that's convenient --
```

```
 1            MR. BORCIA:  Forty-five makes sense to me.

 2            THE COURT:  All right.  Let's do 45.

 3            And as -- I can never remember, is morning -- is early

 4   morning okay or you like to come, Mr. Borcia --

 5            MR. BORCIA:  Early is good for me.  8:30.

 6            THE COURT:  8:30.

 7            Is that okay with everybody?

 8            MR. MESSER:  Sure.  What's the date that we're going

 9   to --

10            THE COURT:  Why don't you pick a date -- 45 days from

11   today.

12            THE CLERK:  June 26th.

13            MR. MESSER:  I'm sorry, what was the date?

14            THE COURT:  June 26th.

15            MS. HARELL:  Would it be okay if we did the week prior

16   to that?

17            THE COURT:  Sure.  Absolutely.  Whatever is good for

18   everybody.

19            THE CLERK:  The 19th.

20            MS. HARELL:  That's okay.

21            MR. BORCIA:  Is that a Monday?

22            THE COURT:  And I'm going to put in the order that

23   the --

24            MR. MESSER:  Your Honor, that's.

25            THE COURT:  -- reproduction will be done by
```

1  defendant's counsel however they want to do it.  In-house.

2          MR. BORCIA:  Okay.

3          THE COURT:  I think that's fair.  But I want you to do

4  it.  I don't want your client to do it over at your client.

5          MR. BORCIA:  Okay.

6          MR. MESSER:  That date, I'm sorry, was not good for

7  me.  The 19th you said?

8          THE CLERK:  The 19th.  What date do you want?

9          THE COURT:  Any date you want is fine.  You just --

10          MR. MESSER:  (Unintelligible).

11          THE COURT:  Any date.  It doesn't matter.

12          THE CLERK:  Except the 19th.

13          THE COURT:  Right.  Whatever date is not convenient

14  for them.  Some other date.

15          MR. MESSER:  The 20th is fine.

16          MS. HARELL:  20th?

17          THE COURT:  Okay.  Now so that we don't have any

18  issues, and, Mr. Messer isn't to be anxious, how long will it

19  take you, Mr. Borcia, to do this, do you think?  A week?

20          MR. BORCIA:  Your Honor, I think so.  I mean, it's --

21          THE COURT:  All right.

22          MR. BORCIA:  We will do it as quickly as we can

23  because I want to get them back to the client.

24          THE COURT:  Is ten days enough?

25          MR. BORCIA:  Yes.

1        THE COURT:  Okay.  So production on the customer cards

2  will be completed -- must be completed by ten days from today,

3  unless it is a weekend, then pick the next day.  Okay.

4        MR. MESSER:  That June 20th, did we decide that's

5  going to be an 8:30 or 9:30?

6        THE COURT:  8:30.  Unless you want to come later.

7        MR. MESSER:  That's fine.

8        MR. BORCIA:  I would rather do it early.

9        MR. MESSER:  That's fine.

10       MR. BORCIA:  We'll see you then, Judge.  Thanks.

11       THE COURT:  All right.  Thanks, everybody.

12       So do you feel better Mr. Borcia?

13       MR. BORCIA:  I do feel better.

14       THE COURT:  I don't want you to be angry.  Lawyers

15  should not be angry.

16       MR. BORCIA:  I know.  Just my nature sometimes.

17       THE COURT:  Okay.

18       MR. BORCIA:  Thank you, Judge.

19    (Which concluded the proceedings in the above-entitled

20  matter.)

21

22

23

24

25

1              CERTIFICATE

2         I HEREBY CERTIFY that the foregoing is a true, correct

3    and complete transcript of the proceedings had at the hearing

4    of the aforementioned cause on the day and date hereof.

5

6    /s/Pamela S. Warren                    May 23, 2012
     Official Court Reporter                     Date
7    United States District Court
     Northern District of Illinois
8    Eastern Division

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25