**No.**

---

<span style="color:red">SHORT RECORD
Appeal No. 14-8010
Filed 3/24/14</span>

**UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT**

| | | |
|---|---|---|
| NICOLE BLOW, on behalf of herself and the class members described below, | ) ) ) | Petition for Rule 23(f) Appeal from the United States District Court |
| Plaintiff-Respondent, | ) ) | for the Northern District of Illinois |
| v. | ) ) | Case No. 11 CV 3468 |
| BIJORA, INC., doing business as AKIRA, | ) ) | Hon. Charles Norgle |
| Defendant-Petitioner. | ) | |

---

**DEFENDANT-PETITIONER BIJORA, INC.'S
PETITION FOR LEAVE TO APPEAL PURSUANT TO RULE 23(f)**

---

James K. Borcia
TRESSLER LLP
233 South Wacker Drive, 22nd Floor
Chicago, IL 60606
(312) 627-4000
*Attorneys for Defendant-Petitioner Bijora, Inc.*

## TABLE OF CONTENTS

DISCLOSURE STATEMENT ..................................................................................................... i

TABLE OF CONTENTS .......................................................................................................... ii

TABLE OF AUTHORITIES ................................................................................................... iii

STATEMENT OF JURISDICTION .......................................................................................... 1

QUESTION PRESENTED ........................................................................................................ 1

INTRODUCTION ..................................................................................................................... 1

STATEMENT OF FACTS ........................................................................................................ 3

ARGUMENT……………………………………………………………………………..6

CONCLUSION ........................................................................................................................ 12

APPENDIX .......................................................................................................................... A01

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Cases**

*Balbarin v. North Star*,
  2011 WL 211013 (N.D. Ill.) ................................................................. 9

*Blair v. Equifax Check Servs., Inc.*,
  181 F.3d 832 (7th Cir. 1999) ........................................................ 6, 7, 11

*CE Design Ltd. v. King Architectural Metals, Inc.*,
  637 F.3d 721 (7th Cir. 2011) ............................................................ 7, 8

*Creative Montessori Learning Ctrs. v. Ashford Gear LLC*,
  662 F.3d 913 (7th Cir. 2011) .......................................................... 7, 11

*G.M. Sign, Inc. v. Brinks Mfg. Co.*,
  2011 WL 248511 (N.D.Ill.) ................................................................. 9

*G.M. Sign, Inc. v. Franklin Bank, SSB*,
  2007 WL 4365359 (N.D. Ill.) (Case No. 06 C 949 ECF 113 at 3) ........... 9

*Gene & Gene LLC v. BioPay LLC*,
  541 F.3d 318 (5th Cir. 2008) .............................................................. 9

*General Telephone Co. v. Falcon*,
  457 U.S. 147 (1982) ......................................................................... 8

*GM Sign v. Finish Thompson*,
  2009 WL 2581324 (N.D. Ill.) ............................................................. 9

*In re New Motor Vehicles Canadian Export Antitrust Litigation*,
  522 F.3d 6 (1st Cir. 2008) ............................................................... 12

*Jamison v. First Credit Services, Inc.*,
  2013 WL 3872171 (N.D.Ill.) .............................................................. 9

*Prado-Steiman ex rel. Prado v. Bush*,
  221 F.3d 1266 (11th Cir. 2000) ........................................................ 12

*Szabo v. Bridgeport Machs., Inc..*,
  249 F.3d 672 (7th Cir. 2001) ........................................................... 7, 8

*West v. Prudential Securities, Inc.*,
  282 F.3d 935 (7th Cir. 2002) ............................................................. 8

**Statutes**

28 U.S.C. § 1331 .............................................................................. 1

47 U.S.C. § 227 ............................................................................... 1

Fed. R. App. P. 5(a) ......................................................................... 1

Fed. R. Civ. P. 23(f) ......................................................................... 1

815 ILCS 505/2 ................................................................................ 5

**Other Authorities**

43 *Stan. L. Rev.* 497 (1991) ............................................................... 12

iii

Defendant Bijora, Inc., doing business as Akira ("Akira"), respectfully petitions, pursuant to Rule 23(f) of the Federal Rules of Civil Procedure, for leave to appeal from the district court's order of March 18, 2014 adopting the magistrate judge's November 18, 2013 report and recommendation certifying a class of Akira's customers who received text messages from Akira. A copy of the district court's order and the magistrate judge's November 18, 2013 report and recommendation ("Report") are appended hereto.

## STATEMENT OF JURISDICTION

The district court had jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiff's claims arose under federal law, namely the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"). The district court entered its class certification order on March 18, 2014. This Petition is being timely filed within fourteen days thereafter. This Court has jurisdiction over this Petition pursuant to Fed. R. Civ. P. 23(f) and Fed. R. App. P. 5(a).

## QUESTION PRESENTED

Whether class certification is proper in a TCPA case where there is evidence of express consent by the Plaintiff and the class members to receive the subject text messages.

## INTRODUCTION

This case raises an important and unsettled issue of TCPA class action law – whether class certification is proper where there is evidence of consent by the Plaintiff and putative class members. The magistrate judge's report and recommendation noted the conflicts between the federal circuits as well as within the district in this Circuit on this issue. (A06-07). This Court has never addressed this issue, and district courts in this Circuit are at odds over it.

This lawsuit represents everything that is wrong with the American civil justice system. Akira sent out promotional text messages to its customers who agreed to receive them and has done nothing wrong. Despite this, Akira faces a multi-billion dollar class action lawsuit

originally brought in the name of a member of Plaintiff's counsel's law firm (without disclosing this fact), and then later, after Plaintiff's counsel was caught and about to be disqualified, ambulance chased with a proposed class notice that was never approved by the Court, and substituted in with a new plaintiff who has no viable claim against Akira.

In this case, the district court certified a class of Akira's customers who received text messages from Akira promoting Akira's products and events after expressly consenting to receive the texts. Akira seeks leave to appeal from that class certification ruling so that the Court may resolve the dispute over whether a class may be certified in a TCPA case where there is evidence submitted of consent to receive the subject communications and reverse what Akira believes to be an erroneous and dangerous ruling of the district court.

Resolution of this issue cannot await final judgment. Without an interlocutory appeal, Akira faces a trial that if it lost would lead to the company going out of business. As a result, without an interlocutory appeal Akira would be forced to settle this lawsuit on unfavorable terms.

The answer to the question presented also has enormous implications beyond this case. Merchants frequently send promotional materials to their customers. If such merchants can be forced to face class action lawsuits over these actions, many will be forced to stop promoting their products and services or be forced out of business.

Akira has strong reasons for its position that the district court should not have certified a class, including: (1) this lawsuit can only realistically proceed on an individual basis; (2) Plaintiff's claims are all based on her assertion that Akira sent her unsolicited text advertisements, but Akira denies liability because Plaintiff expressly agreed to receive such advertisements; (3) the Court must resolve this dispute by hearing evidence from Plaintiff and

Akira, however Plaintiff's evidence will not establish the claim of any other putative class member, and as a result thousands of individual trials would be required.

However, rather than addressing in detail the merits of Akira's position on the class action issues, this Petition focuses on the reasons why the Court should grant Akira leave to appeal. Akira requests, if the Petition is granted, that the Court establish a briefing schedule so that the parties may fully address the merits of the district court's class certification ruling.

## STATEMENT OF FACTS

**Background**. In 2009, Third Party Defendant Opt It, Inc. ("Opt It") solicited Akira to use Opt It's services for marketing its products and stores via a text messaging marketing campaign. Opt It offered a program that would send out mass texts promoting Akira's products and retail locations. In soliciting Akira, Opt It represented to Akira that its text marketing services complied with the law. Akira accepted Opt It's offer and paid Opt It in exchange for Opt It operating the text marketing program. (ECF 222 at 2).

Akira only sent texts to those who consented to receiving text advertisements. The most common way that Akira obtained consent was through its customers signing a card. These cards provided in pertinent part as follows:

> **By providing your mobile you agree to receive text messages from Akira. Msg. & Data rates may apply. To stop msg. rely stop to msg.**

In discovery in this case Akira has produced more than 20,000 of these cards filled out by persons who agreed to receive Akira's texts. (ECF 222 at 2).

In addition to filling out these cards, there were other ways customers consented to receiving the texts. This includes customers verbally giving their cell phone numbers to Akira employees to be inputted into Akira's register system. Individuals could also directly opt in to the program by sending a text to the opt in number. (ECF 222 at 2).

Plaintiff Blow is a long time customer of Akira. She began shopping at Akira in 2008. She usually patronized Akira's North Avenue store, but also shopped at Akira's Water Tower store. She has shopped at Akira 6 to 10 times per year. Blow gave her cell phone number to an Akira sales associate, and also provided her cell phone number to Akira when she signed up for Akira's frequent buyer card program. Also, on September 23, 2009 Blow opted into Akira's text program by sending a text to join the Akira Text Club. When doing so, she received the following automated response:

> **Welcome 2 the AKIRA Mobile Rewards Club! Watch 4 exclusive DISCOUNTS, SPECIALS & INIVTES! 2 stop reply 'STOP AKIRA'. Msg. & Data rates may apply.**

The text messages sent though Akira's text program identified that they were coming from Akira, and Akira is clearly identified in the messages. Also, the messages included the text number for which the messages were sent. (ECF 222 at 3).

Blow never asked Akira to stop sending her texts, and never attempted to opt out of Akira's text program. She has also never complained to Akira about the texts. She learned of this lawsuit when she received an unsolicited email from Plaintiff's counsel about this lawsuit. (ECF 222 at 2).

**District Court Proceedings.** This is a lawyer-generated lawsuit filed on May 24, 2011 by Nicole Strickler through her attorneys Messer & Stilp ("Messer"). Strickler and Messer failed to disclose in their Complaint that Strickler was a partner in the Messer firm. On July 15, 2011, Akira filed its Answer to Strickler's Complaint. On July 19, 2011, Messer filed a motion for class certification[1], again failing to disclose that Strickler was a Messer partner. (ECF 15).

---

[1] The motion was not accompanied by any memorandum in support, and contained mere boilerplate conclusions parroting the language in Rule 23. The motion was noticed and presented on July 22, 2011, before there was even an initial status hearing in this case. At the July 22 presentment, Messer requested that "we enter and continue the motion because [Plaintiff] needs more time for discovery." At the hearing Akira's counsel also requested time to

After discovery (and after the district court's previous certification order), the connection between Strickler and Messer was discovered.  Opt It and Akira then moved to disqualify Messer.  The magistrate judge was going to grant the motion and disqualify Messer, but Messer then asked and was allowed to substitute the class representative.  (ECF 156).

Messer, knowing that no one else had made any complaints about Akira's texts, then went trolling for a new class representative.  On February 22, 2013 Messer sent out mass "ambulance-chaser" emails to the class without consent and without court approval.  (ECF 222 at 4).

On April 26, 2014 Messer filed a Third Amended Complaint on behalf of Blow and Jennifer Glasson ("Glasson").  On June 28, 2013, Glasson filed a notice of voluntary dismissal.  Blow's Third Amended Complaint seeks relief under the TCPA and also under the Illinois Consumer Fraud Act, 815 ILCS 505/2 *et seq*. ("ICFA").  Blow alleges that beginning in September 2009 and continuing through May 2011, Bijora sent text messages advertising its

---

take class discovery in order to respond to the motion.  The district court rejected both Strickler and Akira's requests to take discovery relating to the motion and ordered that Akira respond to the motion within 21 days and Blow to file a reply within 14 days thereafter.  Akira timely filed its response to Strickler's motion for class certification on August 12, 2011.  In its Response, Akira pointed out the deficiencies in Strickler's motion and her failure to meet her burden to establish any of the requirements for certification.  Additionally, Akira renewed its request to allow it to take discovery to respond to the motion and also requested an evidentiary hearing regarding certification.  On August 26, 2011, Strickler filed her reply in support of her certification motion.  Strickler admitted in her reply that her certification motion was "basic" and she needed discovery to obtain evidence to support her motion.  Strickler attempted to cure her deficient motion by improperly submitting new evidence and arguments in her reply.  The reply contained a new factual background section, two supporting affidavits (listing the qualifications of Strickler and Messer) and new arguments on each class certification factor.  The reply also cited eighteen new cases not cited in Strickler's motion.  On August 26, 2011, after the motion for class certification was fully briefed, Strickler filed a motion for leave to amend her complaint.  The proposed amended complaint sought to change the proposed class definition.  Specifically, the new proposed class definition contained three subclasses, while the class definition in the complaint did not contain any subclasses.  As a result, Akira also filed an opposition to the motion to amend.  On September 2, 2011, Akira filed a motion to strike Strickler's certification reply.  On September 7, 2011 Strickler filed a response to the motion to strike.  On September 8, 2011, the district court granted Strickler's motion to file an amended complaint and ordered Akira to file a reply in support of its motion to strike by September 16, 2011.  On September 16, 2011, Akira timely filed its reply in support of its motion to strike.  On March 20, 2011, the district court entered an order granting Strickler's motion for class certification and denying Akira's motion to strike.  Later that same day, Strickler filed a motion for leave to file a Second Amended Complaint, seeking to once again modify the class definition, to add new allegations against Akira, and to add claims against a new Defendant, Opt It.  On April 3, 2011 the district court granted Strickler's motion for leave to file and later that day Strickler filed her Second Amended Complaint.

products, goods, and/or services to her cellular telephone and the cellular telephones of thousands of other Illinois consumers.  (ECF 222 at 4).

On August 6, 2013 Blow filed a motion to recertify the class.  (ECF 203).  Blow alleged that there were over 22,000 consumers who were sent Akira's texts and that Akira sent her 60 text messages.  (ECF 203 at 3-4).  Blow thus seeks to recover $1,500 for each text sent by Akira, for a total of in excess of $2 billion.  (ECF 163 ¶¶ 21, 25).  On September 19, 2013 Akira filed its response to Blow's motion to recertify the class.  (ECF 222).  On November 18, 2013 the magistrate judge issued a report and recommendation that Blow's motion be granted.  On March 18, 2014 the district court entered an order adopting the magistrate judge's report and recommendation.  (ECF 273).

## ARGUMENT

Rule 23(f) infuses courts of appeal with discretionary authority to grant interlocutory review of class certification decisions.  Fed. R. Civ. P. 23(f).  This authority is broad: this Court has "unfettered discretion whether to permit the appeal, akin to the discretion exercised by the Supreme Court in acting on a petition for certiorari."  *Blair v. Equifax Check Servs., Inc.*, 181 F.3d 832, 833 (7th Cir. 1999).  Although no "bright-line" test or "catalog of factors" governs the wisdom of interlocutory appeal under Rule 23(f), an appeal is appropriate when class action status so greatly expands the defendant's potential liability so as to coerce a settlement or when an appeal advances class action law.  *Id.* at 834-35.  Allowing an interlocutory appeal here is appropriate for each of these reasons.

First, this appeal would inform class action law.  In its report and recommendation, the magistrate judge noted the conflicting circuit court and district court opinions on the issue of whether evidence of consent should preclude class certification in TCPA cases.  (A06-7).  There

6

are numerous TCPA lawsuits pending in this Circuit.  As the magistrate judge noted, "consent is *always* an issue in these types of cases."   (A05).   Thus, this appeal "may facilitate the development of the law".  *Blair,* 181 F.3d at 835.

Second, class certification here presents precisely the scenario where "stakes are large and the risk of a settlement or other disposition [may] not reflect the merits of the claim[.]"  *Id.* Certification as a class action can "coerce the defendant into settling on highly disadvantageous terms, regardless of the merits of the suit," and in this case is "highly likely to because of the magnitude of the potential damages."  *Creative Montessori Learning Ctrs. v. Ashford Gear LLC*, 662 F.3d 913, 915 (7th Cir. 2011) (granting Rule 23(f) petition noting that "the Telephone Consumer Protection Act imposes potentially very heavy penalties on its violators—many of whom, quite possibly including tiny Ashford Gear, have never heard of this obscure statute), *citing* 1998 Committee Notes to Fed. R. Civ. P. 23(f); *see also CE Design Ltd. v. King Architectural Metals, Inc.*, 637 F.3d 721, 723 (7th Cir. 2011).

The district court's certification order extends Akira's exposure to in excess of $2 billion. In contrast, denial of class certification would keep this case to less than a $100,000 claim.  Such a dramatic increase in potential liability raises the prospect of coercing a settlement from Akira. *See Szabo v. Bridgeport Machs., Inc..,* 249 F.3d 672, 675 (7th Cir. 2001).  As explained in *Szabo*, "class certification turns a $200,000 dispute (the amount that *Szabo* claims as damages) into a $200 million dispute.  Such a claim puts a bet-your-company decision to Bridgeport's managers and may induce a substantial settlement even if the customers' position is weak.  This is a prime occasion for the use of Rule 23(f), not only because of the pressure that class certification places on the defendant but also because the ensuing settlement prevents resolution of the underlying issues."  *See also West v. Prudential Securities, Inc.,* 282 F.3d 935, 937 (7th Cir. 2002) ("the

effect of a class certification in inducing settlement to curtail the risk of large awards provides a powerful reason to take an interlocutory appeal").

"Accepting an appeal in a big-stakes case is especially appropriate when the district court's decision is problematic." *Szabo*, 249 F.3d at 675. Here the district court's order is highly problematic. A class may be certified only if "the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." *General Telephone Co. v. Falcon*, 457 U.S. 147, 161 (1982); *see also, e.g., CE Design,* 637 F.3d at 723. A rigorous analysis was not conducted in this case. Instead, the magistrate judge rubber stamped the district court's erroneous original certification order and the district court then rubber stamped the magistrate judge's erroneous report and recommendation to recertify the class. Plaintiff failed to establish the necessary elements of commonality, that she or her counsel are adequate representatives, predominance, or that class treatment is the superior method to resolve this dispute.

The magistrate judge's analysis is superficial and fails to take into consideration the facts of this case. While the Report harkens back[2] to the district court's prior ruling on certification, in the process it misrepresents the record. Due to the inability to take discovery before responding to the initial motion, none of the evidence submitted by Akira in response to this motion was presented in the response to the initial motion. Thus, contrary to the Report's contention the "facts and circumstances" are far different with respect to this motion. This includes the fact that plaintiff in the initial motion was Strickler, and she has now been replaced by Blow.

The cases relied on in the Report supporting certification are inapposite. In each of the cases cited in the Report where a class was certified, there was no evidence of consent. *See*

---

[2] Contrary to the Report's suggestion, Akira is not seeking to overturn the district court's earlier decision. (Report at 7). That decision was made regarding a different plaintiff, before discovery, and without any of the evidence that was presented on the motion at issue. As a result, that prior decision is of no effect and should have been given no deference. However, throughout the Report it is obvious the magistrate judge improperly parroted the district court's prior decision.

*Balbarin v. North Star*, 2011 WL 211013, at *1 (N.D. Ill.) ("defendants do not dispute that the putative class members' numbers were generally obtained through the use of a so-called 'skip-tracing device', meaning that the class members did not provide the numbers directly either to defendant or to the original creditor on whose behalf the class were made; defendant's argument that the issue of consent precludes certification is therefore unavailing"); *G.M. Sign, Inc. v. Franklin Bank, SSB*, 2007 WL 4365359, at *3 (N.D. Ill.) (Case No. 06 C 949 ECF 113 at 3) (defendant hired third party fax blaster, did not provide the fax blaster with lists of fax numbers and the fax blaster "obtained lists from other companies and would use those lists for broadcast advertisements by fax"); *GM Sign v. Finish Thompson*, 2009 WL 2581324 (N.D. Ill.) (defendant contracted with Maxileads, a company that creates advertisements and then distributes them via mass faxes or "blast faxes"; defendant did not supply fax numbers to Maxileads but rather Maxileads compiled a list of numbers to which it sent the advertisement from anonymous third-party lists and defendant never received permission to send the faxes from the recipients).

Conversely, in cases with facts similar to this case, such as *Gene & Gene LLC v. BioPay LLC*, 541 F.3d 318 (5th Cir. 2008), *G.M. Sign, Inc. v. Brinks Mfg. Co.,* 2011 WL 248511 (N.D.Ill.) and *Jamison v. First Credit Services, Inc*., 2013 WL 3872171 (N.D.Ill.), certification was denied. The facts of this case are similar to *Gene & Gene, Brink*s and *Jamison*. Akira produced evidence of express consent. However, the report ignores this evidence and misrepresents the Record by asserting that "[u]nlike the defendants in *Gene & Gene, Brinks* and *Jamison*, the defendant here has produced evidence of consent regarding only the newest named plaintiff." (Report at 7). This is incorrect, as Akira produced more than 20,000 cards whereby its customers consented to receive the texts. (ECF 222, Ex. A ¶¶ 5-6). This evidence puts this case in line with cases such as *Gene & Gene, Brinks* and *Jamison*, and distinguishes it from the

9

cases relied on by the magistrate judge.

The magistrate judge's conclusion that consent having to be tried on an individual basis "would always be the case" (Report at 6) is simply wrong. Where as here there is evidence that a significant number of putative class members expressly consented to receive advertisements, courts have unanimously denied certification. Contrary to the Report, consent is not "always an issue in these types of cases" (Report at 8) because in many cases, including the cases cited in support of certification in the Report, there was no evidence of consent and consent is not an issue where it is based on speculation. Also, contrary to the Report's suggestion (Report at 5, n.2) there was in fact a card filled out with Plaintiff's name on it that contained the express consent language. (ECF 228, Ex. D). While Plaintiff alleges that one of Akira's employees filled out the card for her, this would not necessarily negate her express consent. But even if Plaintiff could argue that this would not establish her express consent there is unrefuted evidence that Blow opted into the text program by directly opting into the text program on September 23, 2009. (ECF 222, Ex. A ¶ 7).

Blow argues that she did not consent to receiving texts from Akira. However, there was evidence submitted that directly refuted that assertion. (ECF 222 at 3; ECF 239 at 2). The existence of this dispute highlights why class treatment is not appropriate in this case. This exercise would be necessary for each class member. There is no way Blow can establish lack of consent for other class members. For example, while Blow discusses her conversations and documents with Akira, she cannot do so with respect to other putative class members.

Plaintiff argues that "others similarly situated" did not give consent to receive text messages. Plaintiff fails to cite any evidence to support this conclusion, and it is wrong. Akira produced thousands of cards filled out by or on behalf of putative class members who expressly

agreed to receive texts from Akira. (ECF 222, Ex. A). Also, Sarah Sands' unrefuted testimony established that many of those who were sent texts by Akira willingly provided their mobile numbers to receive the texts after being advised by sales representatives of Akira's text club and thus not only consented but expressed their desire to receive Akira's promotional texts. (ECF 239 at 2).

The Report falls back on the old crutch that class treatment is preferable to dealing with hundreds of suits involving small potential recoveries. However, this ignores the fact that this is a lawyer-manufactured lawsuit, brought solely to generate fees, with no victims. Indeed, although Plaintiff's counsel ambulance chased by sending out thousands of emails, only two people came forward, one of which was determined to never have received the texts (Ms. Glasson) and the other (Blow) who has no claim because she consented to receive the texts. The reason no one else stepped forward, and why there will not be any other lawsuits, is that those receiving the texts are Akira's customers who expressly consented to receiving them. As Ms. Sands testified, those receiving the texts want to receive them because they offer discounts, note sales, and promote Akira's stores and products to Akira's loyal customers. (ECF 239 at 2).

Finally, the resolution of these issues cannot feasibly be postponed to an appeal from a final judgment, as there is unlikely to be an effectively appealable judgment. As this Court has noted, class actions, unless dismissed at an early stage, are typically settled rather than litigated to judgment. *Creative Montessori,* 662 F.3d at 915. The settlement must be approved by the district court, and objectors can appeal the settlement to the court of appeals, but it is unlikely that the particular issue raised in this petition to appeal would be raised in an appeal from approval of a settlement. *Id.; Blair*, 181 F.3d at 834 ("this interaction of procedure with the merits justifies an earlier appellate look. By the end of the case it will be too late—if indeed the

case has an ending that is subject to appellate review"); *Prado-Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1274-75 (11th Cir. 2000); *In re New Motor Vehicles Canadian Export Antitrust Litigation*, 522 F.3d 6, 8 (1st Cir. 2008); Janet Cooper Alexander, "Do the Merits Matter? A Study of Settlements in Securities Class Actions," 43 *Stan. L. Rev.* 497 (1991).

## CONCLUSION

Bijora's Rule 23(f) Petition should be granted and a briefing schedule established to address the merits of the district court's class certification ruling.

Respectfully submitted,

/s/ James K. Borcia
James K. Borcia
TRESSLER LLP
233 South Wacker Drive, 22nd Floor
Chicago, IL  60606
(312) 627-4000
*Attorneys for Defendant-Petitioner Bijora, Inc.*

12

## CERTIFICATE OF SERVICE

In accordance with Federal Rules of Appellate Procedure 31(b) and Circuit Rule 31(b) I, certify that on March 24, 2014, I caused the foregoing petition to be electronically filed with the Clerk for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system. I certify that the following received this notice via email and regular mail and that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Joseph S. Messer
Messer & Stilp, Ltd.
166 West Washington, Suite 300
Chicago, IL 60602
(312) 334-3476
messer@messerstilp.com

Tanya L. Forsheit
Andrew L. Hoffman
*Pro hac vice*
INFOLAWGROUP LLP
1500 Rosecrans Ave., Suite 500
Manhattan Beach, CA 90266
Email:  tforsheit@infolawgroup.com
Email:  ahoffman@infolawgroup.com

/s/ James K. Borcia

378873